**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUEBLO COUNTY, COLORADO**

Civil Action No. 2023Cv30315

PARKER NURSING and REHAB CENTER, LLC, d/b/a THE SUITES PARKER; EDURO HEALTHCARE LLC; and BRETT OTTLEY, in his Capacity as Administrator at PARKER NURSING and REHAB CENTER LLC.

Petitioner,

v.

ROBERT KEBRE, individually and as Personal Representative of the Estate of SANDRA KEBRE, deceased,

Respondents.

---

**PETITION TO COMPEL ARBITRATION**

---

Petitioner Parker Nursing and Rehab Center, LLC d/b/a The Suites Parker (hereinafter referred to as "The Suites Parker"), by and through their undersigned counsel, submit pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, its Petition to Compel Arbitration of Respondent's claims against Petitioners, their owners, and their employees, in accordance with an Arbitration Agreement executed by Respondent on April 15, 2022. In support of its Petition, Petitioner alleges as follows:

**JURISDICTION**

1. Petitioner petitions this Court for an order compelling arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 4.

2. Section 4 of the FAA allows petitioner to seek orders compelling arbitration so long as there is "an independent jurisdictional basis" for the Court to exercise jurisdiction over the parties. *Hall Street Assocs. LLC v. Mattel, Inc.*, 552 US 576, 581-82 (2008).

3. An independent jurisdictional basis exists in this case pursuant to 28 U.S.C. § 1332.

4. The Suites Parker is a single-member limited liability company. Pursuant to *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015), the citizenship of a limited liability company is determined for purposes of diversity jurisdiction by referencing the citizenship of its member(s). The single member of The Suites Parker is Eduro Healthcare, LLC, a Delaware limited liability company with its principal places of business in Utah. Therefore, The Suites Parker is not a citizen of Colorado. *Id.*

5. Upon information and belief, Robert Kebre, individually and as Personal Representative of the Estate of Sandra Kebre, deceased, is an individual who resides in Douglas County, Colorado.

6. Sandra Kebre was a resident of Parker Nursing and Rehab Center, LLC d/b/a The Suites Parker (sometimes referred to as "the Facility"), a nursing home located at 9398 Crown Crest Blvd., Parker, CO 80138, from approximately April 15, 2022, until May 31, 2022. Sandra Kebre died on June 7, 2022.

7. Therefore, Respondent is a citizen of Colorado.

8. To satisfy the second prerequisite for diversity jurisdiction, a party need only state a plausible allegation that the amount in controversy exceeds $75,000. *See, e.g.*, *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

9. Respondent filed a complaint against The Suites Parker and others in Pueblo County District Court, in the State of Colorado. (**Exhibit A**, Compl.).

10. Respondent's pleading in Pueblo County District Court indicates that "damages claimed herein exceed $100,000." (*Id.* at p. 25).

11. For purposes of diversity jurisdiction, Respondent's representation in his Complaint establishes that he seeks in excess of $75,000 in disputed damages, exclusive of interest and costs. *See Paros Props. LLC v. Colo. Cas. Ins. Co.*, 835 F.3d 1264, 1272-73 (10th Cir. 2016) (noting that state court civil cover sheet unambiguously indicated the amount in controversy was more than $100,000 and that there was "no reason not to credit an assertion by an officer of the court on a matter of significant consequence in the state court proceeding.").

12. In light of the foregoing, the amount in controversy exceeds $75,000.

13. The Court does not "look through" to the Complaint in Pueblo County District Court to ascertain diversity of citizenship for a petition to compel arbitration filed in federal court pursuant to Section 4 of the FAA. *Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 325 (2d Cir. 2017); *Dell Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 871 (4th Cir. 2016); *Northpoint Health Services of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002); *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 842 (7th Cir. 1999); *First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir. 1998); *Jerry Erwin Associates, Inc. v. Estate of Asher*, 290 F. Supp. 3d 1213, 1231 (D.N.M. 2017).

14. Instead, diversity of citizenship involving a FAA petition to compel arbitration is satisfied by looking "'only to the citizenship of the parties in the action before it' – that is, the 'parties to the petition to compel' as well as any indispensable parties who must be joined pursuant to [Rule] 19." *Swain*, 867 F.3d at 325 (quoting *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438 (2d Cir. 1995)).

15. The individual named in the Pueblo County District Court action, the Nursing Home Administrator of The Suites Parker (Brett Ottley), is not an indispensable party. *See Rutherford*, 605 F.3d at 491 (finding non-diverse nursing home administrators who were named as

defendants in the underlying state tort action were not necessary and indispensable parties in the nursing home's federal court action to compel arbitration); *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1179 (D.N.M. 2012) (same); *Canyon Sudar Partners, LLC v. Cole*, No. 3:10–1001, 2011 WL 1233320, *3 (S.D.W.Va. Mar. 29, 2011) (same); *Mariner Healthcare, Inc.*, No. Civ. A. 404CV243PA, 2005 WL 1711614 (N.D. Miss. July 21, 2005) (same); *see also* **Exhibit B**, August 11, 2022 Order Denying Motion to Dismiss Petition to Compel Arbitration, *SSC Pueblo Operating Company LLC v. Earl*, Case No. 22-cv-CMA-MEH (D. Colo. Aug. 11, 2022).

16. Eduro Healthcare LLC is likewise not an indispensable party. *See id.* Nevertheless, even if Eduro Healthcare LLC is an indispensable party, it is not a citizen of Colorado.

17. Since complete diversity exists between the parties to the Petition to Compel Arbitration, the other parties named in the Pueblo County District Court action are not indispensable parties, and the amount in controversy exceeds $75,000, the Court has an independent basis to exercise jurisdiction over the Petition to Compel Arbitration. *See* 28 U.S.C. § 1332.

**VENUE**

18. Venue is proper in Colorado as the acts and omissions complained of herein occurred within Douglas County, Colorado.

19. In the Arbitration Agreement, the parties agreed to arbitrate their dispute "in the federal judicial district in which the Facility is located or the hometown of Resident, before one arbitrator." (**Exhibit C**, Arb. Agree., p. 2).

20. Venue is proper in this Court because the parties agreed to arbitrate their dispute where the Facility is located, which is Colorado. *Ansari v. Qwest Communications Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) (relying on a list of cases as well as 9 U.S.C. § 4).

## STATEMENT OF FACTS

21. On or about April 15, 2022, Sandra Kebre was admitted to The Suites Parker, a skilled nursing facility located in Parker, Colorado.

22. In connection with Ms. Kebre's admission to The Suites Parker, Ms. Kebre's son and power of attorney, executed a voluntary arbitration agreement as part of the admission process. (**Exhibit C**).

23. The scope of the Arbitration Agreement encompasses "all claims in law or equity arising from one party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards." (**Exhibit C**, p. 1).

24. The Arbitration Agreement "applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause…." (*Id.*).

25. Mr. Kebre agreed that the Arbitration Agreement was understood to mean that "any claim of medical malpractice, including any claim that medical services were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered or omitted, will be determined by submission to binding arbitration in accordance with the provisions of part 2 of

article 22 of Title 13 of Colo. Rev. Stat., and not by a lawsuit or resort to court process except as Colorado law provides for judicial review of arbitration proceedings. " (*Id.*)

26. Mr. Kebre agreed that "[b]oth parties to this agreement, by entering into it, have agreed to the use of binding arbitration in lieu of having any such dispute decided in a court of law before a jury." (*Id.*)

27. Mr. Kebre, individually and as Ms. Kebre's personal representative, filed tort claims against The Suites Parker and others in Pueblo County District Court related to care and services Ms. Kebre received at The Suites Parker during her residency. The Complaint alleges claims arising out of alleged negligence. Accordingly, Respondent improperly filed claims in state court that should have been submitted to arbitration. (*See generally* **Exhibit A**, Compl.; **Exhibit C**, Arb. Agree.).

## LEGAL STANDARD

28. The Federal Arbitration Act ("FAA") applies to all arbitration agreements "relating to interstate commerce." *Comanche Indian Tribe of Oklahoma v. 49, LLC,* 391 F.3d 1129, 1132 (10th Cir. 2004).

29. Courts are instructed to view transactions associated with an arbitration agreement broadly to determine whether they relate to or "affect" interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-81 (1995); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

30. Ultimately, the determination of whether the FAA applies to an arbitration agreement based on activities affecting interstate commerce "is not a rigorous inquiry." *Grohn v. Sisters Charity Health Servs.*, 960 P.2d 722, 725 (Colo. App. 1998).

31. Once an arbitration agreement comes under the broad applicability of the FAA, it is deemed "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

32. The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," and under this policy, any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 154 (2002).

33. Courts determine whether a valid agreement to arbitrate exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

34. When deciding that issue, courts typically apply the law governing the formation of contracts in the particular state in question. *See id.*

35. However, a court's state law contract analysis must also give "due regard . . . to the federal policy favoring arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 475-76 (1989).

36. Federal law preempts state law that renders arbitration agreements unenforceable. *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 339 (2011).

37. Accordingly, the Court may only invalidate an arbitration agreement governed by the FAA based on "generally applicable contract defenses" like fraud or unconscionability. *Id.*

38. Once a valid arbitration agreement is recognized, courts determine whether the specific dispute between the parties falls within the scope of the agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

39. Once the Court determines both a valid arbitration agreement exists and the dispute falls within the scope of the agreement, the FAA mandates a stay of judicial proceedings "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3; *see also Am. Family Mut. Ins. Co. v. TAMKO Bldg. Prods.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016).

**THE FAA APPLIES TO THE ARBITRATION AGREEMENT**

40. The FAA applies to the Arbitration Agreement because it affects interstate commerce. *See Comanche Indian Tribe of Oklahoma*, 391 F.3d at 1132.

41. Because interstate commerce can be generally affected in the aggregate, rather than by a specific showing, *see Citizens Bank*, 539 U.S. at 56-57, facilities like The Suites Parker are routinely found to affect interstate commerce.

42. "Nursing homes through general practice, which includes basic daily activities like receiving supplies from out-of-state vendors and payments from out-of-state insurance companies or the federal Medicare program, affect interstate commerce." *See Vicksburg Partners, LP v. Stephens*, 911 So.2d 507, 515 (Miss. 2005).

43. Indeed, the provision of health care service is generally considered to affect interstate commerce. *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 328-33 (1991) (hospital's purchase of out-of-state medicines and acceptance of out-of-state insurance established interstate commerce).

44. Courts across the country have found facility activities like those mentioned above are "sufficient to fulfill the interstate commerce requirement of the FAA." *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184 (D.N.M. 2012) (listing cases from courts in New Jersey, Alabama, Oklahoma, and Massachusetts); *Ping v. Beverly Enterprises, Inc.*,

376 S.W. 3d 581 (Ky. 2012) (listing additional cases from courts in Mississippi, Illinois, New Mexico, Washington, and Georgia).

45. Colorado generally recognizes that the medical industry affects interstate commerce. *See Grohn*, 960 P.2d at 725-26 (holding that medical industry involves interstate commerce); *Stephen v. Brookdale Senior Living Cmtys., Inc.*, 2012 U.S. Dist. LEXIS 132906 (D. Colo. Sept. 17, 2012); *see also Moffett v. Life Care Ctrs. Of America*, 219 P.3d 1068 (Colo. 2009).

46. Like the facilities identified in the cases above, The Suites Parker's provision of services and activities generally affects interstate commerce.

47. The Suites Parker receives payments from the Medicare program.

48. Likewise, The Suites Parker receives payments from the Colorado Medicaid Program, which is substantially funded by the federal government.

49. The Suites Parker additionally purchases goods and services, including medical supplies, business office supplies, and furniture, from vendors located in multiple states.

50. Thus, because The Suites Parker's activities and services sufficiently affect interstate commerce, the FAA governs the Arbitration Agreement. *See, e.g.*, *Spradlin*, 893 F. Supp. 2d at 1184.

**THE FAA PREEMPTS COLORADO LAW HOSTILE TO ARBITRATION**

51. Under Section 13-64-403 of Colorado's Health Care Availability Act ("HCAA"), an arbitration agreement between a resident or a resident's agent and a health care entity must meet certain requirements, such an including specific language, or else it is deemed invalid. *See, e.g.*, *Colorow Health Care, LLC v. Fischer*, 2018CO52M.

52. The HCAA's arbitration form requirements are not "generally applicable contract defenses" and are hostile to arbitration agreements. *See Concepcion*, 563 U.S. 333 at 339.

53. Therefore, the FAA preempts the HCAA's arbitration provisions. *See id.*; *see also* C.R.S. 13-64-403.

54. One Colorado case has been interpreted as applying the McCarran-Ferguson Act to "reverse preempt" the FAA with respect to the HCAA's requisite arbitration language. *See Allen v. Pacheco*, 71 P.3d 375, 381 (Colo. 2003).

55. The McCarran-Ferguson Act protects States' ability to regulate insurance and "reverse preempts" any act of Congress that "specifically relates to the business of insurance." *Espinosa v. Nexion Health, Inc.*, No. 14-cv-00752-LTB-MEH, 2014 WL 2781139, at *2 (D. Colo. June 19, 2014) (citing 15 U.S.C. § 1012(b)).

56. "*Allen* is not binding on this Court because it is principally concerned with the interpretation of federal law; that is, whether the McCarran-Ferguson Act is applicable to § 13-64-403(3) & (4) of the [HCAA]." *Espinosa*, 2014 WL 2781139, at *2; *see also Watermark Harvard Square, LLC v. Calvin*, No. 17-CV-00446-RM-KMT, 2018 WL 1166707 (D. Colo. Mar. 6, 2018), *adopted by* 2018 WL 1952587 (D. Colo. Mar. 29, 2018).

57. The arbitration agreement in *Allen* concerned "the relationship between an HMO 'medical service provider' and 'patient'" which is "the relationship between a 'medical insurer' and 'insured.''" *Id.* (citing *Allen*, 71 P.3d at 383 n. 9).

58. Here, in contrast to *Allen* and identical to *Espinosa* and *Watermark*, the Arbitration Agreement is "wholly unrelated to the business of insurance." *Espinosa*, 2014 WL 2781139, at *2; *Watermark*, 2018 WL 1166707, at *7-8.

59. Therefore, the McCarran-Ferguson Act does not apply, the FAA preempts the HCAA's arbitration requirements, and the Arbitration Agreement is enforceable despite the absence of HCAA language or any other purported deficiency under C.R.S. § 13-64-403. *Espinosa*, 2014 WL 2781139, at *3; *Morrison v. Colorado Permanente Medical Group, PC.*, 983 F. Supp. 937 (D. Colo. 1997); *Watermark*, 2018 WL 1166707, at *7-8.

**A VALID AGREEMENT TO ARBITRATE EXISTS IN THIS CASE**

60. The FAA simply requires "an agreement in writing" for arbitration to proceed. 9 U.S.C. § 3.

61. Similarly, under Colorado contract law, an agreement to arbitrate exists if a party manifests an intent to be bound by the arbitration agreement, *E-21 Engineering v. Steve Stock & Assocs.*, 252 P.3d 36, 39 (Colo. App. 2010), which can be demonstrated by the parties' "writings." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986).

62. Undeniably, the Arbitration Agreement is an agreement in writing. (**Exhibit C**).

63. While the FAA does not require a signature to enforce its written requirement, *see, e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005), the Arbitration Agreement is signed by The Suites Parker and Ms. Kebre's power of attorney, Mr. Kebre. (**Exhibit C**).

64. Therefore, an arbitration agreement exists.

65. Since the FAA does not change "background principles" of state contract or agency law binding non-signatories to an agreement, *see, e.g.*, *MSPBO, LLC v. Garmin Intern., Inc.*, No. 13-CV-02287-PAB-KMT, 2014 WL 4477931, at *3 (D. Colo. Mar. 30, 2014), Colorado agency law governs Mr. Kebre's authority to execute the Arbitration Agreement.

66. Colorado agency law "attributes the legal consequences of one person's actions to another person on three distinct bases, two of which are pertinent here: apparent authority and actual authority." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 396 P.3d 651, 655 (Colo. 2017) (identifying the third basis as *respondeat superior*).

67. An agent has actual authority when, "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act." *Id. at* 656 (quoting the Restatement (Third), § 2.01 cmt. b).

68. Actual authority encompasses "concepts of both express and implied authority." *Id.* (citing *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994)).

69. Express actual authority "exists when the principal directly states that the agent may perform a particular act on the principal's behalf." *Id.*

70. Implied actual authority "embraces the authority to perform acts that are 'incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent.'" *Id.* (quoting *Willey*, 876 P.2d at 1264).

71. Implied actual authority additionally exists when "an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestations in light of the principal's objectives and other facts known to the agent." *Id.* (quoting the Restatement (Third), § 2.01 cmt. b).

72. Consequently, an actual authority analysis examines the agent's belief that she has the ability to act on behalf of the principal, based upon (1) the principal expressly stating to the agent that she can so act; (2) the principal implicitly directing the agent to act to accomplish the main authority expressly delegated; or (3) the principal implicitly directing the agent to act based

upon a reasonable interpretation of the principal's manifestations and objectives. *See id.* at 655-656.

73. Here, Ms. Kebre expressly authorized Mr. Kebre to act on her behalf in all respects as her POA, and she provided Mr. Kebre the power to enter into contracts on Ms. Kebre's behalf. (**Exhibit D**, Powers of Attorney, p. 6 (expressly authorizing Mr. Kebre's general authority over "All preceding subjects" including "Claims and litigation")).

74. Accordingly, Ms. Kebre expressly authorized Mr. Kebre to enter into contracts like the Arbitration Agreement. *See id.*

75. Even if Mr. Kebre's grant of power of attorney did not expressly authorize him to execute the Arbitration Agreement on Ms. Kebre's behalf, it was implied for the same reasons discussed above.

76. Therefore, Mr. Kebre had actual authority to enter into the Arbitration Agreement on Ms. Kebre's behalf.

77. The apparent authority analysis examines a third party's belief that an agent can act on behalf of a principal. *State Farm*, 96 P.3d at 656.

78. "An agent has apparent authority . . . when the third party reasonably believes, based on the principal's manifestations, that the agent has authority to act on behalf of the principal." *Id.* (citing the Restatement (Third), § 2.03).

79. Apparent authority protects third parties who rely upon their good faith belief that an agency relationship exists between the principal and apparent agent. *See Rush Creek Solutions, Inc. v. Ute Mt. Ute Tribe*, 107 P.3d 402, 407 (Colo. App. 2004).

80. The Suites Parker reasonably believed Mr. Kebre could execute the Arbitration Agreement on Ms. Kebre's behalf because Mr. Kebre was designated as Ms. Kebre's agent and power of attorney. (*See* **Exhibit D**.)

81. There is no evidence Ms. Kebre objected to The Suites Parker staff about Mr. Kebre signing documents on her behalf, or that Ms. Kebre withdrew Mr. Kebre's agency authority in the presence of The Suites Parker staff.

82. Due to Ms. Kebre's acquiescence to Mr. Kebre's conduct, The Suites Parker reasonably interpreted Ms. Kebre's actions as authorizing Mr. Kebre to execute documents on her behalf, and, therefore, Mr. Kebre had apparent authority to execute the Arbitration Agreement.

**THE SCOPE OF THE ARBITRATION AGREEMENT EXTENDS TO RESPONDENT'S CLAIMS BECAUSE THE AGREEMENT CONTEMPLATES TORT CLAIMS**

83. The Arbitration Agreement broadly states "Covered Disputes include without limitation all claims in law or equity arising from one party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards."(**Exhibit C**, p. 1).

84. This sweeping language includes Respondent's claims against The Suites Parker, all of which sound in tort. (**Exhibit A**); *SCOR Reinsurance Co.*, 362 F.3d at 1289-92; *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1461-62 (10th Cir. 1995).

85. Additionally, this broad language includes Respondent's claims against the other parties named in the state court action because the agreement "shall inure to the benefit of, bind, and survive them, their successors, and assigns." (**Exhibit C**, p. 1).

86. Furthermore, federal and state courts are clear that arbitration agreements extend to tort claims connected to a particular contractual relationship. *See P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999); *Giraldi by & through Giraldi v. Morrell*, 892 P.2d 422 (Colo. App. 1994).

87. Thus, even if Respondent's claims do not arise directly from the agreement, *i.e.*, they are not breach of contract claims, that does not impact enforcement of the agreement. *See P&P Indus.*, 179 F.3d at 871.

**THE SCOPE OF THE ARBITRATION AGREEMENT EXTENDS TO MR. KEBRE BECAUSE THE AGREEMENT SPECIFICALLY EXTENDS TO MS. KEBRE'S HEIRS**

88. Because of the broad scope of the Arbitration Agreement, it extends to all of Ms. Kebre's claims and Mr. Kebre's individual claims.

89. The Arbitration Agreement is binding on Ms. Kebre's estate as well as "all persons whose claim is derived through or on behalf of the Resident, including any next of kin, guardian, executor, administrator, legal representative, or heir of the Resident, and any person who has executed this Agreement on the Resident's behalf." (**Exhibit C**, p. 1).

90. Mr. Kebre is Ms. Kebre's Personal Representative. (**Exhibit A**, ¶ 1).

91. Thus, by the plain terms of the agreement, the Arbitration Agreement extends to Mr. Kebre's individual claims.

92. Moreover, Mr. Kebre is bound by the Arbitration Agreement as a signatory.

**FIRST CLAIM FOR RELIEF**

**(Order Directing the Parties to Proceed to Arbitration in Accordance with the Terms of the Arbitration Agreement)**

93. The Suites Parker incorporates the allegations and authority from the preceding paragraphs as though fully set forth here.

94. The Arbitration Agreement is a valid, irrevocable, and enforceable arbitration agreement.

95. No grounds exist under general Colorado contract law defenses to invalidate the Arbitration Agreement.

96. The FFA preempts any Colorado law hostile to the Arbitration Agreement, including the HCAA's arbitration requirements at C.R.S. § 13-64-403.

97. The Arbitration Agreement was executed by Ms. Kebre's authorized agent, Mr. Kebre.

98. The Arbitration Agreement insures to the benefit of The Suites Parker.

99. The scope of the Arbitration Agreement extends to Respondent and his claims against The Suites Parker and its employees in the Pueblo County District Court lawsuit.

100. Pursuant to the FAA, Petitioner respectfully requests the Court to order Respondent to submit his claims against The Suites Parker and its owner and employees to binding arbitration in accordance with the Arbitration Agreement.

**SECOND CLAIM FOR RELIEF**

**(Order Enjoining Respondents from Continuing to Pursue their Claims in Pueblo County District Court in the State of Colorado)**

101. The Suites Parker incorporates the allegations and authority from the preceding paragraphs as though fully set forth here.

102. The Parties' Arbitration Agreement states, "this Agreement shall be governed and interpreted under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq." (**Exhibit C**, p. 3)

103. The Parties' Arbitration Agreement further states, "[i]t is understood that any claim of medical malpractice, including any claim that medical services were unnecessary or unauthorized or were improperly, negligently, or incompletely rendered or omitted, will be

determined by submission to binding arbitration in accordance with the provisions of part 2 of article 22 of Title 13 of Colo. Rev. Stat., and not by a lawsuit or resort to court process except as Colorado law provides for judicial review of arbitration proceedings." (**Exhibit C**, p. 1).

104. The Parties' Arbitration Agreement "shall inure to the benefit of, bind, and survive them, their successors, and assigns." (*Id.*).

105. The individual named in the Pueblo County District Court action was an employee of The Suites Parker at the time of the events underling Respondent's claims.

106. If Respondent is permitted to continue his claims against the other parties in the Pueblo County District Court action, he will violate an order to submit his claims to arbitration in accordance with the Arbitration Agreement. (*See generally* **Exhibit C**).

107. Therefore, Petitioner respectfully requests the Court to enjoin Respondent from pursing any claims against Parker Nursing and Rehab Center, LLC d/b/a The Suites Parker, its owner, Eduro Healthcare LLC, or the individual named Brett Ottley in the Pueblo County District Court action.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner requests judgment as follows:

a. An Order compelling the arbitration of Respondent's claims against The Suites Parker, its agents and employees pursuant to the Arbitration Agreement;

b. An Order enjoining Respondent from pursuing his claims against the parties named in the Pueblo County District Court action titled *Robert Kebre, individually and as Personal Representative of the Estate of Sandra Kebre, deceased, v. Parker Nursing and Rehab Center, LLC, d/b/a The Suites*

*Parker; Eduro Healthcare LLC; and Brett Ottley, in his Capacity as Administrator at Parker Nursing and Rehab Center LLC.* Case No. 2023CV30315;

c. An Order, pursuant to 9 U.S.C. § 3, staying this case pending completion of arbitration between Respondent and The Suites Parker; and

d. Any other relief in favor of Petitioner the Court deems just and proper.

Dated June 22, 2023.

Respectfully submitted by,

_*Margaret L. Boehmer*____________

Thomas B. Quinn
Margaret L. Boehmer
**GORDON REES SCULLY MANSUKHANI LLP**
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel. 303-534-5160
Email: tquinn@grms.com
mboehmer@grsm.com
*Attorneys for Parker Nursing and Rehab, LLC d/b/a The Suites Parker*

Petitioner's Address:
9398 Crown Crest Blvd
Parker, CO 80138