EXHIBIT A TO PETITION

# Service of Process

## Information Sheet

| | | |
|---|---|---|
| **Date Served** | : | 05/05/2023 1:54 PM CST |
| **Company Name** | : | PARKER NURSING AND REHAB CENTER, LLC |
| **State** | : | Colorado |
| **Entity ID** | : | 20181589945 |
| **SOP Classification** | : | Other |
| **Court/Agency** | : | District Court, Pueblo County, Colorado |
| **Document Type** | : | Summons |
| **Nature of Action** | : | Civil |
| **Case/Reference Number** | : | 2023Cv30315 |
| **How Served** | : | Served |
| **Served By / Plaintiff** | : | Robert - Kebre, \| Individually - And - As - Personal Representative Of T |

Disclaimer: We are not legal professionals and as a result, all information should be reviewed by legal counsel.

EXHIBIT A TO PETITION

| | |
|---|---|
| DISTRICT COURT, PUEBLO COUNTY, COLORADO<br><br>Court Address:<br>501 N. Elizabeth St.<br>Pueblo, CO 81003 | DATE FILED: April 18, 2023 3:00 PM<br>FILING ID: 89810F11495CB<br>CASE NUMBER: 2023CV30315<br>▲ COURT USE ONLY ▲ |
| **Plaintiff(s):**<br>ROBERT KEBRE, individually and as Personal Representative of the Estate of SANDRA KEBRE, deceased,<br><br>v.<br><br>**Defendant(s):**<br>PARKER NURSING and REHAB CENTER, LLC, d/b/a THE SUITES PARKER; EDURO HEALTHCARE LLC; and BRETT OTTLEY, in his Capacity as Administrator at PARKER NURSING and REHAB CENTER LLC. | Case Number:<br><br>Division: Courtroom: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE-NAMED DEFENDANT:** Parker Nursing and Rehab Center, LLC d/b/a The Suites Parker

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: April 18, 2023

John V. O'Grady
Reddick Law, PLLC
One Information Way, Suite 105
Little Rock, Arkansas 72202
(877) 907-7790

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br><br>Court Address:<br>4000 Justice Way<br>Castle Rock, CO 80109 | DATE FILED: April 18, 2023 2:00 PM<br>FILING ID: 89810F11495CB<br>CASE NUMBER: 2023CV30315 |
| **Plaintiff(s):**<br>ROBERT KEBRE, individually and as Personal Representative of the Estate of SANDRA KEBRE, deceased,<br><br>v.<br><br>**Defendant(s):**<br>PARKER NURSING and REHAB CENTER, LLC, d/b/a THE SUITES PARKER; EDURO HEALTHCARE LLC; and BRETT OTTLEY, in his Capacity as Administrator at PARKER NURSING and REHAB CENTER LLC. | ▲ **COURT USE ONLY** ▲ |
| **Plaintiff's Counsel**:<br>Brian D. Reddick, #46386<br>John V. O'Grady, #49703<br>Robert W. Francis, #47007<br>Reddick Law, PLLC<br>One Information Way, Suite 105<br>Little Rock, AR 72202<br>(877) 907-7790<br>(501) 907-7793 (Fax)<br>brian@reddicklawfirm.com<br>jogrady@reddicklawfirm.com<br>rob@reddicklawfirm.com | Case Number:<br><br>Div: Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Robert Kebre, individually and as Personal Representative of the Estate of Sandra Kebre, deceased, for his *Complaint and Jury Demand* against the Defendants Parker Nursing and Rehab Center, LLC d/b/a The Suites Parker; Eduro Healthcare, LLC; and Brett Ottley, in his capacity as Administrator for The Suites Parker, states as follows:

**Statement of Parties & Jurisdiction**

1. Robert Kebre is the son of Sandra Kebre and the duly appointed Personal Representative of the Estate of Sandra Kebre pursuant to the Letters of Administration issued February 7, 2023, attached hereto as **Exhibit A**.

2. Robert Kebre is a resident and citizen of Douglas County, Colorado.

3. Sandra Kebre was a resident of Parker Nursing and Rehab Center, LLC d/b/a The Suites Parker (sometimes referred to as "the Facility"), a nursing home located at 9398 Crown Crest Blvd., Parker, CO 80138, from approximately April 15, 2022, until May 31, 2022. Sandra Kebre died on June 7, 2022.

4. Defendant Parker Nursing and Rehab Center, LLC d/b/a The Suites Parker is a domestic limited liability company. Parker Nursing and Rehab Center, LLC was engaging in business in the state of Colorado and owned, operated, controlled, managed, and held the license to operate The Suites Parker. Parker Nursing and Rehab Center, LLC provided healthcare, medical services, therapy, rehabilitation, skilled care, and/or custodial care to the public in Douglas County, Colorado. The causes of action in this suit arise out of the business conducted by Parker Nursing and Rehab Center, LLC in the ownership, operation, management, licensing, control, and services provided by the Facility during the residency of Sandra Kebre. At all times material hereto, Parker Nursing and Rehab Center, LLC was responsible for the care and services provided to Sandra Kebre. Parker Nursing and Rehab, LLC may be served with process through its registered agent Legalinc Corporate Services Inc. at 1155 Kelly Johnson Blvd., Ste. 111, Colorado Springs, CO 80920.

5. Defendant Eduro Healthcare, LLC is a foreign limited liability company organized under the laws of Utah. Defendant Eduro Healthcare, LLC was engaging in business in the State of Colorado and owned, operated, controlled, managed, and/or provided services to the Facility and its residents in Douglas County, Colorado, including healthcare, medical services, therapy, rehabilitation, skilled nursing care, and/or custodial care. The causes of action in this suit arise out of the business conducted by Eduro Healthcare, LLC in the ownership, operation, management,

licensing, control, and provision of services provided by the Facility during the residency of Sandra Kebre. Eduro Healthcare, LLC may be served with process through its registered agent Legalinc Corporate Services, Inc. at 299 S. Main Street, Suite 1300, Salt Lake City, UT 84111.

6. Eduro Healthcare, LLC was the employer, supervisor, manager and/or partner of all caregivers, and/or agents of The Suites Parker and is personally, directly, and vicariously liable for the acts and omissions of itself, as well as the agents, employees, servants, contractors, subcontractors, staff and/or partners of The Suites Parker, all of whom played a role in the care provided to Sandra Kebre and in the operation of the Facility.

7. Defendant Brett Ottley, in his capacity as Administrator of The Suites Parker was the Colorado-licensed Administrator of the Facility. Upon information and belief, Brett Ottley was the Administrator at all relevant times during Sandra Kebre's residency. The causes of action in this suit arise out of Brett Ottley's administration of the facility during Sandra Kebre's residency and are attributable to the operation of the Facility as overseen and directed by Brett Ottley in conjunction with the other Defendants. As the Administrator, Brett Ottley was responsible for ensuring compliance with federal and state laws and regulations and for implementing the policies, procedures, and practices developed by the Defendants for the operation of the Facility and the care of residents, including implementing staffing policies and practices. As Administrator, Brett Ottley is a Defendant from whom significant relief is sought and whose conduct forms a significant basis for the claims asserted herein. Brett Ottley is a resident and citizen of the State of Colorado and can be served at his last known address.

8. For the purposes of this Complaint, the term "Defendants" collectively refers to Parker Nursing and Rehab, LLC d/b/a The Suites Parker, Eduro Healthcare, LLC, and Brett Ottley in his capacity as Administrator of The Suites Parker.

9. The Defendants collectively controlled the operation, planning, management, budget, and quality control of The Suites Parker through a joint enterprise, partnership, and/or through the agency of each other. The authority exercised by Defendants over the facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedures, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal and managerial policies established by the Defendants.

10. At all relevant times, Defendants were operating personally or through their agents, servants, workers, employees, contractors, subcontractors, and staff, each of whom acted with actual, apparent, and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control and supervision of Defendants.

11. Venue is proper in the Douglas County District Court as the acts and omissions complained of herein occurred within Douglas County.

12. The Court has jurisdiction over the subject matter at issue because this is a civil action for damages and/or equitable relief. Colo. Const. Art. VI, § 9(1).

**Factual Background**

13. Defendants exercised complete and total control over the healthcare of all the residents of the Facility, including Sandra Kebre. Defendants also controlled every aspect of the operation of the Facility, including:

a. setting staffing levels;

b. allocating budgetary resources and managing all financial aspects of operation;

c. marketing;

d. supervision, management, training, and discipline of Facility employees and

agents, including the administrator and director of nursing;

e. determining whether residents could be admitted to or needed to be discharged from the Facility based on their condition;

f. dictating census and payor-source quotas for the Facility, and

g. development, implementation, and adherence to policies and procedures to dictate the Facility's operation and the care and services provided by employees and other agents acting at the Facility, including addressing the recognition and/or treatment of residents' medical conditions and ensuring timely and appropriate care was provided whether at the Facility or from other medical providers.

14. Defendants, through advertising and marketing of the Facility to local hospitals and other providers, held themselves out as capable of providing the level of care required by sick, elderly, and frail individuals, such as Sandra Kebre, including medical, skilled nursing, rehabilitation, occupational therapy, physical therapy, speech therapy, and daily custodial care.

15. The Defendants held themselves out to the public at large, as well as specifically to Sandra Kebre, as being capable and willing to provide the care needed to meet the medical, nursing, mental, and psychosocial needs of residents such as Sandra Kebre.

16. Defendants monitored the operation of the Facility and the care being provided at the Facility, through their respective members, managers, regional personnel, board of directors, and corporate officers. The Defendants were aware of conditions in the Facility and issues with quality of care being provided in the Facility by utilizing Department of Health survey results, customer satisfaction surveys, mock surveys, internal quality indicator reports, and CMS Quality Indicator Reports.

17. As a result of this monitoring, the Defendants knew that they were incapable of providing or were failing to provide the level of care and service required by the residents of The Suites Parker, who the Defendants were accepting for admission to the Facility, including Sandra

Kebre.

18. Knowing that staffing costs are the largest part of nursing homes' budgets, Defendants chose to operate and manage the Facility to maximize profits at the expense of the care provided to residents, including Sandra Kebre, by negligently, intentionally, or recklessly mismanaging or reducing staffing levels at the Facility below the levels needed to sufficiently meet the needs of the residents, including Sandra Kebre.

19. Despite their knowledge of the likelihood of harm due to these insufficient staffing levels, and despite complaints of insufficient staffing from staff members, residents, and their families, Defendants recklessly and/or negligently disregarded the consequences of their actions and set staffing levels at the Facility below what was necessary to meet the needs of Facility residents, including Sandra Kebre.

20. Defendants knew that residents with greater health problems and higher acuity are a source of higher reimbursement rates from governmental programs, including Medicare, because of their complex medical needs. Upon present information and belief, such reimbursements from governmental programs, including Medicaid and Medicare, are Defendants' primary source of income.

21. Possessing this knowledge, Defendants intentionally increased the numbers of residents at the Facility with higher acuity and complex medical needs.

22. Defendants knew, or should have known, that this increase in the acuity and care needs for the residents would significantly increase the need for additional staff, services, resources, and supplies necessary to provide adequate care to meet the individualized needs of residents, including Sandra Kebre.

23. Despite the knowledge of the increased needs for additional staff because of the

increased acuity levels of the Facility's residents, including Sandra Kebre, Defendants knowingly disregarded those acuity levels and knowingly established staffing levels that created recklessly high resident to nurse ratios and recklessly high resident to certified nurse aide ratios.

24. Defendants knowingly disregarded the increased resident acuity levels and the increased time required by the staff to provide activities of daily living, medications, and treatments.

25. The acts and omissions of the Defendants were motivated by a desire to decrease the costs and increase the profits of the Facility.

26. Defendants accomplished these goals by knowingly and recklessly reducing the expenditures for needed staffing, training, care, and supplies, at the expense of the healthcare of the residents and despite the knowledge that this cost-cutting would inevitably lead to severe injuries, such as those suffered by Sandra Kebre.

**The Importance of Nursing Home Staffing**

27. Federal and state regulations require the Defendants to conduct an initial, and periodic thereafter, comprehensive, accurate, standardized assessment of each resident's needs and functional capacity. From that comprehensive assessment, Defendants were required to formulate an individual care plan tailor-made for each resident, including reasonable objectives and timetables to meet the medical, nursing, and mental and psychosocial needs of the residents.

28. State and federal law requires that nursing homes provide sufficient staff to meet resident functional dependency, medical, and nursing needs, to assure resident safety, and to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident based upon the needs and conditions of the residents identified in the comprehensive assessment and care plan. 6 Colo. Code Regs. § 1011-1:5-9; 42 C.F.R. § 483.35.

29. In 2001, the Centers for Medicare and Medicaid Services (CMS) issued a report to

Congress containing its findings regarding adequacy of nursing home staffing entitled "Centers for Medicare & Medicaid Services (CMS) Report to Congress: Appropriateness of Minimum Nursing Staffing Ratios in Nursing."

30. CMS noted that inadequate nurse staffing was "a potential root cause of many of the problems observed" in nursing homes, "including malnutrition, dehydration, pressure sores, abuse, and neglect."

31. In the study underlying the 2001 Report, CMS concluded that a minimum of 2.8 to 3.2 nurse aide hours per resident per day were necessary to provide care for residents on a timely basis, with more hours necessary in facilities housing residents with higher needs.

32. Furthermore, CMS determined that a minimum of 4.1 total direct care hours per resident per day (2.8 hours of nurse aide care and 1.3 hours of licensed care) were necessary to avoid quality issues on certain key quality measures, including urinary tract infections, sepsis, electrolyte imbalance, functional improvement, falls, incidence of pressure sores, incidence of skin trauma, resisting care improvement, and weight loss.

33. Additionally, CMS found that a minimum of 0.45 registered nurse care hours per resident per day was necessary to ensure residents received adequate care.

34. CMS noted that where facilities fell below minimum staffing levels on particular units or shifts, "there appears to be little facilities can do to mitigate quality problems."

35. CMS further noted that care levels at or below 2.2 hours of nurse aid care per resident per day "are predicted to result in long waits for service and the inconsistent implementation of care even under conditions when staff are working at unrealistically high productivity levels."

36. To ensure that CMS was receiving accurate representations of facility staffing, in

August 2015, CMS instituted a system for facilities to submit staffing information based on payroll and other auditable data called the Payroll-Based Journal (PBJ) system. This system allows staffing information to be collected from the nursing home facilities on a regular and more frequent basis. Facilities are required to submit complete and accurate direct care staffing information based on payroll and other verifiable and auditable data. Facilities are required to submit the number of hours that each staff member is paid to deliver services for each day worked.

37. The PBJ data can be used to analyze things such as staffing levels as well as employee turnover and tenure, all of which can impact the quality of care delivered by a facility.

**Staffing Levels at The Suites Parker**

38. Beginning in November 2017, CMS made the PBJ data publicly available through its website. These public use files are based on the information reported to CMS by the Facility and include information on staffing hours for each day in the quarter, along with resident census information provided to CMS through Minimum Data Sets (MDSs).

39. A review of PBJ data submitted by The Suites Parker to CMS indicates that the Facility failed to meet the minimum hours of nurse aide care and total direct care necessary to adequately care for the needs of its residents.

40. Specifically, the Facility fell short of the threshold level of 2.8 hours of nurse aide care per resident per day for minimal care for 47 days of Sandra Kebre's stay. In other words, The Suites Parker failed to meet the necessary level for nurse aide care for 100% of Sandra Kebre's stay at the Facility.

41. Additionally, the Facility failed to provide the necessary 4.1 hours of total direct care for approximately 47 days of Sandra Kebre's stay. In other words, The Suites Parker also failed to meet the necessary level for direct care for 100% of Sandra Kebre's stay at the Facility.

42. Even worse, the Facility failed to meet even the 2.2 hours threshold that CMS noted to be inadequate approximately 42 days, or 89.4% of Sandra Kebre's stay at the Facility.

43. In fact, during the course of Sandra Kebre's residency, the Facility averaged only an abysmal 1.92 hours of nurse aide care per resident per day and only 2.99 hours of direct care per resident per day.

44. By the Facility's own numbers, the staffing and care provided by The Suites Parker was woefully insufficient to provide the required care for the residents and resulted in harm and injury to Sandra Kebre, as described herein.

**Awareness of Problems at The Suites Parker**

45. The Defendants knew or should have known about problems with resident care at the Facility and were on notice and aware of problems with resident care at the Facility, including those failures and deficiencies that caused Sandra Kebre's injuries.

46. In addition to their internal monitoring of Facility conditions, the Defendants had actual or constructive notice of issues and deficiencies in care that placed residents at risk as a result of surveys conducted by the Colorado Department of Public Health & Environment during or near the time of Sandra Kebre's residency.

47. For instance, in a survey conducted on November 7, 2019, The Suites Parker was cited for the following failures among others:

a. Failure to respond appropriately to all alleged violations;
b. Failure to provide enough food/fluids to maintain a resident's health;
c. Failure to provide safe, appropriate pain management for a resident who requires such services;
d. Failure to ensure that a nursing home area is free from accident hazards and

provides adequate supervision to prevent accidents;

e. Failure to provide appropriate treatment and care according to orders, resident's preferences and goals;

f. Failure to provide and implement an infection prevention and control program;

g. Failure to develop and implement a complete care plan that meets all the resident's needs, with timetables and actions that can be measured; and

h. Failure to ensure medication error rates are not 5 percent or greater.

48. The failures and deficiencies identified in the surveys are similar to the failures and deficiencies that caused Sandra Kebre's injuries. The Defendants were aware of these problems with care at The Suites Parker but failed to take appropriate corrective action to prevent their reoccurrence in reckless disregard for the health and safety of residents, including Sandra Kebre.

**Impact of Defendants' Conduct on Sandra Kebre**

49. Sandra Kebre was admitted to The Suites Parker on approximately April 15, 2022.

50. Sandra Kebre's medical history at the time of admission included hypertension, hypersensitivity lung disease, diabetes, heart failure, and chronic obstructive pulmonary disease. All Defendants were fully aware of Sandra Kebre's medical history, medical conditions, and co-morbidities, and the level of nursing care she would require when they represented that they could adequately care for her needs.

51. Sandra Kebre arrived at The Suites Parker on April 15, 2022. She was noted to have sustained multiple falls prior to her admission.

52. On May 12, 2022, Ms. Kebre had a temperature of 103.1 degrees and tested positive for Influenza A.

53. On May 15, 2022, Ms. Kebre had a urinalysis performed that was positive for a

urinary tract infection. Cultures later reported Pseudomonas. Ms. Kebre was also noted to be steadily coughing, and a chest x-ray revealed patchy infiltration.

54. On May 19, 2022, Ms. Kebre was put on Levaquin to cover for both presumed pneumonia and the urinary tract infection. The following day, she was switched to Ertapenem.

55. On May 28, 2022, Ms. Kebre spiked a fever of 101.2 degrees. The following day she began experiencing left-sided chest pain.

56. On May 30, 2022, Ms. Kebre had a chest x-ray performed. The results were consistent with an infectious process.

57. On May 31, 2022, Ms. Kebre was found on the floor of her room after an unwitnessed fall. She complained of severe knee pain to her left knee and left shoulder. X-rays revealed fractures.

58. Ms. Kebre was transferred to the hospital and found to have bilateral femur fractures. She was also determined to have sepsis related to her urinary tract infection and pneumonia. Blood work revealed a white blood cell count of 16.

59. Orthopedics determined that Ms. Kebre would need surgical repairs of her fractures, but it was delayed due to her infections.

60. Throughout the month of May 2022, Ms. Kebre experienced significant weight loss. On May 4, 2022, Ms. Kebre weighed 145 pounds. By May 25, 2022, she weighed 135 pounds. On June 5, 2022, she weighed only 110 pounds.

61. While in the hospital, Ms. Kebre started on antibiotics and sepsis treatment, but she showed no improvement. On June 5, 2022, Ms. Kebre was placed on hospice.

62. Only two days later, on June 7, 2022, Ms. Kebre passed away with her death certificate noting bilateral distal peri-prosthetic femur fractures and fall as her causes of death.

63. Defendants acted negligently and failed to provide appropriate care and supervision for Sandra Kebre during her residency, causing Sandra Kebre to suffer injuries including:

a. Falls with injury, including bilateral femur fractures;

b. Urinary tract infections;

c. Pneumonia;

d. Sepsis;

e. Weight loss;

f. Pain and suffering; and

g. Death.

64. Moreover, Sandra Kebre's medical records while she was a resident at the Facility evidence missing and incomplete documentation, including but not limited to nursing assessments, nursing progress notes, weights, lab reports, Minimum Data Sets, full and complete care plans, and transfer and discharge documentation.

65. The severity of the recurrent negligence inflicted upon Sandra Kebre while a resident of the Facility accelerated the deterioration of her health and physical condition and resulted in physical and emotional injuries.

66. Sandra Kebre suffered emotional trauma, extreme pain, and suffering as a result of the injuries she sustained while a resident at The Suites Parker, all of which contributed to her death.

**Causes of Action Against Defendants**

***Count I: Negligence***

67. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs.

68. Defendants, their agents, servants, workers, employees, contractors, subcontractors, and staff were licensed professionals or healthcare providers, and Plaintiff is asserting professional liability claims against them.

69. Plaintiff is also asserting claims for ordinary negligence, custodial neglect, and corporate negligence against Defendants for their operation and mismanagement of the Facility.

70. Defendants' corporate conduct was independent of the negligent conduct of the employees of the facility, and was outrageous, willful, wanton, and exhibited a reckless indifference to the health and well-being of the residents of The Suites Parker, including Sandra Kebre.

71. When Defendants agreed to admit Sandra Kebre, they assumed direct, non-delegable duties and obligations for providing for her total healthcare, including the provision of nutrition, hydration, activities of daily living, medical, skilled nursing, occupational therapy, speech therapy, physical therapy, daily custodial care, and supervision such as reasonable caregivers would provide under similar circumstances. The Defendants were under a continuing duty, both under the common law of the State of Colorado and by the terms of the resident admission agreement, to exercise reasonable care in the monitoring, supervision, and treatment of Sandra Kebre considering her known conditions.

72. Defendants, by and through their employees, caregivers, and agents, each owed a duty of care to Sandra Kebre to exercise the appropriate skill and care of licensed nursing homes, physicians, nurses, certified nurse aides, therapy providers, rehabilitation providers, dietary personnel, Directors of Nursing, Nursing Home Administrators.

73. Defendants also had the duty to operate the Facility and implement and enforce policies and procedures in a way that addressed the clinical and daily needs of the residents of the

Facility, including Sandra Kebre, and to ensure that all residents received quality care consistent with the applicable standard of care.

74. The Defendants owed a duty to their residents, including Sandra Kebre, to provide care, treatment, and physician services and to coordinate services of trained nursing and physician professionals within accepted standards of care of skilled nursing homes.

75. The Defendants owed a duty to their residents, including Sandra Kebre, to hire, train, oversee, and supervise employees and all other agents who delivered care at the facility to ensure that care and services were provided to residents in a safe and appropriate manner.

76. Defendants had the duty and were required under federal and state regulations, as well as general standards of care, to develop and implement reasonable and effective programs, as well as operate in a manner, to prevent the types of injuries suffered by Sandra Kebre.

77. Defendants had the duty to ensure effective physician participation in care-related processes, ensure that the medical and overall care at the Facility was consistent with applicable laws and regulations, and develop and implement effective policies to ensure adequate coordination of medical and nursing care at the Facility for residents, including Sandra Kebre.

78. Defendants had the duty—and federal and state regulations required—the Defendants to ensure that Sandra Kebre received adequate supervision, assistance, proper skin care, proper medical treatment, and appropriate skilled nursing care as dictated by her needs and determined in accordance with an accurate, comprehensive resident assessment.

79. Defendants, acting through their administrators, employees, and other agents had the duty to oversee the standard of professional practice by the members of their staff or other agents at the Facility and ensure that Sandra Kebre received care consistent with professional standards and in accordance with her individualized needs pursuant to a resident-specific care plan.

80. Defendants had the duty to employ competent, qualified, and trained staff to ensure that proper care, treatment, and services were provided to all residents of the Facility, including Sandra Kebre.

81. Defendants had the duty to ensure that the Facility and its residents, including Sandra Kebre, were provided with sufficient staff and resources to guarantee the timely recognition and appropriate treatment of resident medical, nursing, and/or custodial needs whether within the Facility or from other medical care providers.

82. Defendants had the duty to staff the Facility with personnel at sufficient numbers and training to provide the care and services necessary to meet the needs of the Facility's residents, as well as to adequately fund the Facility and not to under-budget for staffing and resources.

83. Defendants had the duty to keep the Facility's residents free from abuse and neglect and to ensure the respect and dignity of residents, including Sandra Kebre.

84. Defendants had the duty not to admit more residents to the Facility than for which they could safely provide necessary care and services and to refuse to admit residents that Defendants knew or should have known required a higher level of care and services than Defendants would be able to provide.

85. Defendants had the duty to take adequate measures to remedy known problems in the delivery of care and services, including in the provision of medical, skilled nursing, and rehabilitative care to residents.

86. Defendants also had the duty to notify residents, their families, and/or representatives of the fact that Defendants were unable to provide adequate care and services when Defendants knew or should have known of their deficiencies in providing such are and services.

87. The Defendants breached the duties owed to their residents, including Sandra

Kebre, and were negligent in their care and treatment of her, through their acts or omissions detailed throughout this complaint. Defendants' failures and breaches of duty proximately caused the severe injuries to Sandra Kebre detailed in this Complaint.

88. Defendants failed to formulate, implement, and enforce adequate policies and procedures to prevent Sandra Kebre from suffering the injuries described herein.

89. Defendants failed to hire, utilize, train, and retain sufficient staff to meet the needs of the residents, including Sandra Kebre, which caused her to suffer the injuries described herein.

90. Defendants failed to oversee, supervise, and correct all persons who provided skilled nursing, rehabilitation, occupational therapy, speech therapy, dietary services, and custodial care in the Facility who failed to provide adequate and appropriate healthcare to prevent Sandra Kebre from suffering the injuries described herein.

91. Defendants failed to implement a budget that properly funded the Facility's staffing and supply needs and allowed the Facility to provide adequate and appropriate healthcare to Sandra Kebre.

92. Defendants failed to adequately and timely conduct comprehensive, accurate, standardized, and reproducible assessments of Sandra Kebre's functional capacity and which accurately reflected her status. 42 CFR § 483.20.

93. Defendants failed to develop, implement, review, and update an appropriate, comprehensive, and individualized care plan for Sandra Kebre that included measurable objectives and timetables to meet her medical, nursing, custodial, mental, and psychosocial needs as identified in the comprehensive assessment. 42 CFR § 483.21.

94. Defendants failed to ensure that Sandra Kebre received and that the Facility provided the necessary care and services for her to attain or maintain the highest practicable level

of physical, mental, and psychosocial well-being, consistent with her comprehensive assessment and plan of care. 42 CFR § 483.24.

95. Defendants failed to ensure that Sandra Kebre did not needlessly suffer from preventable and treatable pain and that the Facility provided pain management consistent with professional standards of practice and Sandra Kebre's comprehensive care plan. 42 CFR 483.25(k).

96. Defendants failed to timely and appropriately notify Sandra Kebre's physician(s) and consulting specialists when she experienced significant changes in condition, which contributed to Sandra Kebre's injuries and illnesses as described herein. 42 CFR § 483.10(g)(14).

97. Defendants failed to obtain new or modified physician orders when Sandra Kebre's changes in condition demonstrated a need to alter treatment. 42 CFR § 483.10(g)(14).

98. Defendants failed to refer Sandra Kebre to the necessary medical specialists in a timely manner who would have properly diagnosed and/or treated her condition.

99. Defendants failed to timely and appropriately notify Sandra Kebre's family and personal representatives when she experienced significant changes in condition. 42 CFR § 483.10(g)(14).

100. Defendants failed to ensure that Sandra Kebre was treated with respect and dignity and received care in a manner and environment that promoted maintenance or enhancement of her quality of life. 42 CFR § 483.10(a).

101. Defendants failed to administer the Facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable level of physical, mental, and psychosocial well-being of Sandra Kebre. 42 CFR § 483.70.

102. Defendants failed to maintain medical records on Sandra Kebre in accordance with

accepted professional standards and practices for skilled nursing facilities with respect to:

a. the diagnosis of Sandra Kebre's injury risk based upon her unique condition and the symptoms and changes in condition exhibited by her;

b. the treatment of Sandra Kebre's injuries; and

c. the assessment and establishment of appropriate plans of care and treatment for Sandra Kebre. 42 CFR § 483.70(i).

103. Defendants failed to have the governing body of the Facility discharge its legal and lawful obligation of:

a. ensuring compliance with the rules and regulations designed to protect the health and safety of Sandra Kebre;

b. ensuring compliance with the resident care policies at the Facility, including policies designed to prevent the types of injuries suffered by Sandra Kebre; and

c. ensuring that appropriate corrective measures were implemented to correct problems concerning insufficient staffing and inadequate resident care.

104. Defendants failed to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care.

105. Defendants failed to organize adequate primary and supporting physician coverage to meet residents' needs.

106. Defendants failed to ensure effective physician participation in care-related processes.

107. Defendants failed to develop, implement, and maintain an effective infection control program to prevent the development and transmission of infections to Sandra Kebre and to adequately respond to and treat those infections once developed. 42 CFR § 483.80.

108. Defendants failed to ensure that Sandra Kebre maintained acceptable parameters of nutritional status and received sufficient fluid intake to maintain proper hydration and health. 42 CFR § 483.25(g).

109. Defendants failed to ensure that Sandra Kebre received the necessary care, services, and equipment to prevent her from suffering reduced mobility and decreased range of motion. 42 CFR § 483.25(c).

110. Defendants failed to ensure that the Facility remained as free of accident hazards as is possible and that Sandra Kebre received adequate supervision and assistance to prevent accidents. 42 CFR § 483.25(d).

111. Defendants failed to ensure that Sandra Kebre received the necessary care and assistance to maintain continence and to prevent urinary tract infections and to restore continence to the extent possible. 42 CFR § 483.25(e).

112. Defendants failed to ensure that Sandra Kebre received timely laboratory services to meet her needs and consistent with symptoms and changes in condition exhibited by her. 42 CFR § 483.50(a).

113. Defendants failed to accurately and consistently document Sandra Kebre's needs and the care and services provided to her in response to such needs.

114. Defendants failed to respond in a timely manner with appropriate medical, nursing, and custodial care to the injuries suffered by Sandra Kebre while in Defendants' care.

115. Defendants failed to take necessary and appropriate steps to remedy the continuing problems at the Facility that Defendants knew, or should have known, were occurring with Sandra Kebre's care, which included the need to increase the number of employees, hiring skilled and/or trained employees, providing adequate training to the employees, monitoring the conduct of the employees, and/or changing policies and procedures to improve resident care.

116. Defendants failed to ensure that Sandra Kebre was free from abuse and neglect. 42 CFR § 483.12.

117. Defendants failed to maintain compliance with governmental regulations, including 42 C.F.R. § 483.101 *et seq.* and 6 CCR 1011-1 Chap 05 *et seq.*, to which Defendants are required to adhere and to which their delivery of care is compared during Federal and CDPHE Annual and Complaint-based surveys, including 42 C.F.R. §483.10(i)(2), §483.24(b), §483.25, §483.25(b), §483.25(d), §483.45(e), §483.45(d), and §483.45(f).

118. As a result of the negligence, carelessness, and recklessness of the Defendants herein described, Sandra Kebre suffered the serious and permanent injuries described in this Complaint, aggravation or activation of any pre-existing conditions, illnesses, ailments, or diseases she had, and the accelerated deterioration of her health, physical and mental condition, and a loss of the ordinary pleasures of life, a loss of dignity, humiliation, and death.

119. The injuries of Sandra Kebre are a direct and proximate result of, and were caused by, the acts, omissions, and failures of the Defendants set forth above, singularly or in combination.

120. These acts, omissions, and failures occurred exclusively because of the negligence, carelessness, and recklessness of the Defendants and not because of any act or failure to act on the part of Sandra Kebre.

121. Sandra Kebre's injuries were of a kind which do not ordinarily occur in the absence of negligence on the Defendants' part.

122. In committing the acts and omissions herein, Defendants acted in a negligent manner, with reckless indifference to the rights and safety of Sandra Kebre.

123. Defendants' owners, officers, directors, partners, members, and managers were made aware of Federal and CDPHE survey results and placed on notice of the care issues and/or physical/environmental issues of the Facility and the danger those issues posed to residents, including Sandra Kebre.

124. Defendants, including their owners, officers, directors, partners, members, managers, and employees, knew they had been cited by Federal and CDPHE surveyors for deficiencies regarding the Facility prior to, during, and/or after the residency of Sandra Kebre, and were placed on notice as to care issues and/or physical/environmental issues at the Facility, but failed to take adequate corrective action to remedy those issues.

125. As a direct and proximate result of Defendants' acts and/or omissions, and the breach of their duty of care, negligence, carelessness, and recklessness, Sandra Kebre suffered severe permanent physical injuries resulting in suffering and disfigurement, mental anguish, embarrassment, humiliation, degradation, emotional distress, and loss of personal dignity, loss of capacity for enjoyment of life, the expense of otherwise unnecessary hospitalizations, medical expenses, and residency at the Facility, aggravation of pre-existing medical conditions, severe pain, and death.

126. In causing the aforementioned injuries, Defendants knew, or should have known, that Sandra Kebre would suffer such harm.

127. The Defendants' multiple breaches of the duties owed to Sandra Kebre as set forth above caused her to suffer economic loss, non-economic loss, and personal injury. Damages include pain and suffering, severe emotional distress, grief, upset, hospital bills, and doctor bills in an amount to be determined by the jury at trial.

***Count II: Violation of the Colorado Consumer Protection Act***

128. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs.

129. At all times relevant to this complaint, the Defendants had in effect a massive marketing campaign designed to lure actual and prospective consumers of their services into The

Suites Parker.

130. The Defendants' marketing campaign included print media, handouts, and brochures, internet marketing, as well as an internet web page wherein Defendants represented that The Suites Parker has "a history of providing high quality 24/7 skilled nursing care to our residents." The Defendants' website claims that their location "boasts a range of amenities that provide the ultimate experience."

131. The Defendants' marketing and advertising campaign significantly impacted the market for long-term care services locally and nationally.

132. In addition to print and internet marketing and advertising media, The Suites Parker had admissions and marketing personnel responsible for filling the Facility's beds with residents by representing that the Facility could adequately meet the needs of residents.

133. Among other things, The Suites Parker, through its marketing and advertising materials, held itself out as "helping each of our residents maintain their highest level of independence and be part of a vital and loving community..."

134. The Suites Parker differentiated itself from other caregivers to attract new residents by claiming:

a) "our patients have experiences that are positive, memorable, and shared…" and

b) "a proud history of providing excellence care and positive outcomes…"

135. Yet the Defendants knew that The Suites Parker was incapable of providing the level of care and treatment necessary to ensure the health, safety, and well-being of its residents including Sandra Kebre, due to chronic and pervasive understaffing at the Facility.

136. The Defendants' promises and representations about the quality of care and the level of services provided at The Suites Parker were unfair and deceptive. The Suites Parker did

not and could not provide the level of care and services represented as illustrated by the failures noted in the CDPHE surveys described above.

137. The Defendants' multiple regulatory violations are indicative of understaffing at The Suites Parker and evidence that the Defendants knew, or should have known, that they were unable to provide the kind of care and treatment and services necessary to promote the health, safety, and well-being of their residents, including Sandra Kebre.

138. The Defendants' deceptive and fraudulent representations about the level and quality of care offered at The Suites Parker constitute deceptive trade practices actionable under the Colorado Consumer Protection Act. C.R.S. § 6-1-101, *et seq*.

139. These deceptive and fraudulent practices also constitute a pattern of deceptive trade practices.

140. As a result of the Defendants' deceptive trade practices and violations of the Colorado Consumer Protection Act, the Plaintiff has suffered actual damages in an amount to be determined by the jury at trial.

***Count III: Wrongful Death***

141. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs.

142. Robert Kebre, the Plaintiff, is the surviving son of Sandra Kebre, deceased, and brings this wrongful death action on behalf of all the surviving heirs of Sandra Kebre.

143. By understaffing The Suites Parker, the Defendants caused injuries to Sandra Kebre. Understaffing led to a lack of adequate care, treatment, and supervision, which resulted in Sandra Kebre's severe injuries. The Defendants' failures and purposeful understaffing of the Facility ultimately led to Sandra Kebre's death.

144. As a result of the injuries to Sandra Kebre, medical expenses and funeral expenses were incurred and are claimed together with all damages permitted under the Colorado Wrongful Death Act.

145. As a result of the Defendants' negligence and wrongful acts or inaction, Sandra Kebre suffered fatal injuries as described in this Complaint, and Plaintiff claims for all medical and burial expenses, non-economic damages, and all damages permitted under the Colorado Wrongful Death Act.

***Prayer For Relief***

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against the Defendants in an amount to be determined by the jury at trial, and for the following relief and damages:

a. Economic loss;

b. Non-economic loss;

c. Actual damages under the Colorado Consumer Protection Act;

d. All damages permitted by the Colorado Wrongful Death Act;

e. Attorney's fees;

f. Court costs and witness fees;

g. Pre-judgment and post judgment interest on any award of damages to the extent permitted by law;

h. Treble damages and actual damages under the Colorado Consumer Protection Act; and

i. Such other and further relief as this Court may deem proper.

**Plaintiff hereby demands a trial by jury as to all claims so triable.**

**This matter is exempt from C.R.C.P. 16.1 as the damages claimed herein exceed $100,000.**

Dated: April 18, 2023 Respectfully submitted,

*<u>/s/ John V. O'Grady</u>*
Brian D. Reddick, #46386
John V. O'Grady, #49703
Robert W. Francis, #47007
**Reddick Law, PLLC**
One Information Way, Suite 105
Little Rock, AR 72202

*Attorneys for Plaintiff*

**Plaintiff's address:**
Robert Kebre
5461 Fox Sparrow Rd.
Parker, CO 80134

EXHIBIT A TO PETITION

| | |
|---|---|
| DISTRICT COURT<br>Douglas Combined Courts<br>4000 Justice Way Suite 2009<br>Castle Rock CO 80109<br>720-437-6200 | DATE FILED: April 21, 2023 8:43 AM<br>CASE NUMBER: 2023CV30315<br>COURT USE ONLY |
| Plaintiff(s): ROBERT KEBRE, individually and as Personal Representative of the Estate of SANDRA KEBRE, deceased<br><br>v<br>Defendant( s): PARKER NURSING and REHAB CENTER, LLC, d/b/a THE SUITES PARKER; EDURO HEALTHCARE LLC;and BRETT OTTLEY, in his Capacity as Administrator atPARKER NURSING and REHAB CENTER LLC. | Case Number:<br>23CV30315<br><br>Division:<br>6 |

**DELAY REDUCTION ORDER (FOR CASES FILED ON OR AFTER JULY 1, 2015)**

This Court is on a delay reduction docket.

A. For all civil actions, the following deadlines must be met:

1. Service of Process: Returns of service on all defendants shall be filed within 63 days after the date of the filing of the complaint.

2. Default Judgment: Application for default judgment shall be filed within 35 days after default has occurred.

3. Trial Setting:

a. For actions governed by C.R.C.P. 16, the trial shall be set at the case management conference. Pursuant to C.R.C.P. 16(d)(1), the case management conference shall be held no later than 49 days after the case is at issue. The responsible attorney shall file and serve a notice to set the case management conference no later than 7 days after the case is at issue. The proposed case management order is due no later than 7 days prior to the conference.

1. "The responsible attorney" shall mean plaintiff s counsel, if the plaintiff is represented by counsel, or if not, the defense counsel who first enters an appearance in the case.

11. A case shall be deemed at issue when all parties have been served and all pleadings permitted by C.R.C.P. 7 have been filed or defaults or dismissals have been entered against all non-appearing parties, or at such other time as the Court may direct.

b. For actions governed by Simplified Procedure under C.R.C.P. 16.1, the responsible attorney shall set the case for trial pursuant to C.R.C.P. 121, 1-6 no later than 42 days after the case is at issue, unless otherwise ordered by the Court.

1. "The responsible attorney" shall mean plaintiff s counsel, if the plaintiff is represented by counsel, or if not, the defense counsel who first enters an appearance in the case.

11. A case shall be deemed at issue when all parties have been served and all pleadings permitted by C.R.C.P. 7 have been filed or defaults or dismissal have been entered against all non-appearing parties, or at such other time as the Court may direct.

B. A District Court Civil Cover Sheet (JDF 601) shall be filed with all civil complaints.

C. Plaintiff shall send a copy of this Order to all other parties who enter an appearance, and shall file a certificate of mailing within 14 days following the entry of appearance.

D. Any attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case a document entitled "Information Regarding Case(s)" informing the Court of the related case(s) and stating whether consolidation is appropriate.

E. If an attorney or pro se party fails to comply with this Order, the Court may dismiss the case without prejudice.

April 21, 2023

BY THE COURT:

Presiding Judge Douglas County

EXHIBIT A TO PETITION

| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br><br>Court Address:<br>4000 Justice Way<br>Castle Rock, CO 80109 | DATE FILED: April 18, 2023 2:00 PM<br>FILING ID: 89810F11495CB<br>CASE NUMBER: 2023CV30315 |
| **Plaintiff(s):**<br>ROBERT KEBRE, individually and as Personal Representative of the Estate of SANDRA KEBRE, deceased,<br><br>v.<br><br>**Defendant(s):**<br>PARKER NURSING and REHAB CENTER, LLC, d/b/a THE SUITES PARKER; EDURO HEALTHCARE LLC; and BRETT OTTLEY, in his Capacity as Administrator at PARKER NURSING and REHAB CENTER LLC. | ▲ **COURT USE ONLY** ▲ |
| **Plaintiff's Counsel**:<br>Brian D. Reddick, #46386<br>John V. O'Grady, #49703<br>Robert W. Francis, #47007<br>Reddick Law, PLLC<br>One Information Way, Suite 105<br>Little Rock, AR 72202<br>(877) 907-7790<br>(501) 907-7793 (Fax)<br>brian@reddicklawfirm.com<br>jogrady@reddicklawfirm.com<br>rob@reddicklawfirm.com | Case Number:<br><br>Div: Ctrm: |
| **CERTIFICATE OF REVIEW** | |

Plaintiff, Robert Kebre, individually and as Personal Representative of the Estate of Sandra Kebre, deceased, hereby submits the following *Certificate of Review*:

**CERTIFICATE OF REVIEW**

Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

a. Counsel has consulted with licensed professionals with expertise in the areas of the alleged negligent conduct as set forth in Plaintiff's Complaint; and,

b. The licensed professionals who have been consulted have reviewed all known facts, including such records, documents, and other materials which the professionals have found relevant to the allegations of negligent conduct as complained of in Plaintiff's Complaint; and,

c. Based upon such facts, these licensed professionals have concluded that the filing

of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

d. The licensed professionals who have reviewed all known facts relevant to the allegations of negligent conduct as contained in Plaintiff's Complaint meet the requirements set forth in C.R.S. § 13-64-401.

Dated: April 18, 2023

Respectfully submitted,

*/s/ John V. O'Grady*

Brian D. Reddick, #46386
John V. O'Grady, #49703
Robert W. Francis, #47007
**Reddick Law, PLLC**
One Information Way, Suite 105
Little Rock, AR 72202

*Attorneys for Plaintiff*

DATE FILED: April 18, 2023 2:00 PM
FILING ID: 89810F11495CB
CASE NUMBER: 2023CV30315

# Exhibit A

EXHIBIT A TO PETITION

| | |
|---|---|
| ☒District Court ☐Denver Probate Court<br>Douglas County, Colorado<br>Court Address:<br>4000 Justice Way<br>Castle Rock, CO 80109 | DATE FILED: February 7, 2023 10:07 AM<br>CASE NUMBER: 2023PR30064 |
| **In the Matter of the Estate of:**<br><br>**SANDRA EPSTEIN KEBRE, aka SANDRA E. KEBRE, aka SANDRA KEBRE**<br><br>**Deceased** | ▲ **COURT USE ONLY** ▲<br>Case Number:<br>23PR30064<br><br>Division COC Courtroom |

## LETTERS OF ADMINISTRATION

Robert Kebre (name) was appointed or qualified by this court or its registrar on 2/7/2023 (date) as:

☒Personal Representative; or
☐Successor Personal Representative.

The decedent died on June 7, 2022 (date).

These Letters are proof of the Personal Representative's authority to act pursuant to § 15-12-701, et. seq., C.R.S.

☒The Personal Representative's authority is unrestricted; or
☐The Personal Representative's authority is restricted as follows:

Date: 2/7/2023

[signature]
Probate Registrar/(Deputy)Clerk of Court

[Seal: Douglas Combined Court, Douglas County, State of Colorado, 1876]

## CERTIFICATION

Certified to be a true copy of the original in my custody and to be in full force and effect as of __________ (date).

Probate Registrar/(Deputy)Clerk of Court

**CLOSURE OF ESTATE NOTICE:**
**The Personal Representative (PR) may close an Estate by following applicable procedures in JDF 957, 958, or 959. Otherwise, after three years of no action in the Court file, the Court will close the estate without statutory protection for the PR**

EXHIBIT A TO PETITION

| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br><br>Court Address:<br>4000 Justice Way<br>Castle Rock, CO 80109 | DATE FILED: April 18, 2023 2:00 PM<br>FILING ID: 89810F11495CB<br>CASE NUMBER: 2023CV30315 |
| **Plaintiff(s):**<br>ROBERT KEBRE, individually and as Personal Representative of the Estate of SANDRA KEBRE, deceased,<br><br>v.<br><br>**Defendant(s):**<br>PARKER NURSING and REHAB CENTER, LLC, d/b/a THE SUITES PARKER; EDURO HEALTHCARE LLC; and BRETT OTTLEY, in his Capacity as Administrator at PARKER NURSING and REHAB CENTER LLC. | ▲ **COURT USE ONLY** ▲ |
| **Plaintiff's Counsel**:<br>Brian D. Reddick, #46386<br>John V. O'Grady, #49703<br>Robert W. Francis, #47007<br>Reddick Law, PLLC<br>One Information Way, Suite 105<br>Little Rock, AR 72202<br>(877) 907-7790<br>(501) 907-7793 (Fax)<br>brian@reddicklawfirm.com<br>jogrady@reddicklawfirm.com<br>rob@reddicklawfirm.com | Case Number:<br><br>Div: Ctrm: |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT** | |

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third-party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

   ☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date:** April 18, 2023

*/s/ John V. O'Grady*
**Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third-party complaint.